# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| MERLYNN ROSE, | ) |
| | ) 3:13-cv-00638-RCJ-VPC |
| Plaintiff, | ) |
| | ) |
| v. | ) **REPORT AND RECOMMENDATION** |
| | ) **OF U.S. MAGISTRATE JUDGE** |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |
| | ) |

This Report and Recommendation is made to the Honorable Robert C. Jones, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. Before the court is plaintiff's motion for reversal or remand (#15),[1] and defendant's reply and cross-motion to affirm (#19). For the reasons set forth herein, the court recommends that plaintiff's motion for remand to the Commissioner be granted, and defendant's cross-motion be denied.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On April 16, 2010, Merlynn Rose ("plaintiff") filed for Social Security Disability Insurance ("SSDI") benefits and Supplemental Security Income ("SSI") payments under Titles II and XVI of the Social Security Act. (Administrative Record ("AR") 29). In both applications, plaintiff alleged that she became disabled on June 15, 2005. (AR 172). Plaintiff's applications for benefits were denied initially on May 24, 2011, and again upon consideration on August 31, 2011. (AR 29).

---

[1] Refers to the court's docket number.

-1-

On October 18, 2011, plaintiff and counsel appeared at a hearing before Administrative Law Judge ("ALJ") Norman L. Bennett. (AR 29, 53-71). At the hearing, plaintiff amended her disability onset date to February 20, 2009. (AR 54). The ALJ issued a written decision on August 15, 2012, finding that plaintiff had not been disabled at any time between February 20, 2009 and the decision date. (AR 29). Plaintiff appealed, and the Appeals Council denied review. (AR 7-10). Accordingly, the ALJ's decision became the final decision of the Commissioner ("defendant").

Following defendant's extension of the filing deadline (AR 1-2), plaintiff filed a complaint for judicial review (#3) on January 8, 2014. Following several extensions to both parties, plaintiff timely filed a motion for remand (#15) on July 10, 2014, and defendant opposed and filed a cross-motion to affirm on September 10 (#19). In the competing motions, the parties dispute whether the ALJ properly evaluated and weighted the medical opinion of Dr. Aisha Devera (*see* #15 at 5; #19 at 3).

## II.  STANDARD OF REVIEW

The burden of proving disability in a claim for SSDI benefits and SSI payments rests upon the claimant. 20 C.F.R. §§ 404.1512(a), 416.912(a); *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). To satisfy this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423 (d)(1)(A).

This court has jurisdiction to review an ALJ's decision denying SSDI and SSI claims after the plaintiff has exhausted administrative remedies. *See Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161-62 (9th Cir. 2012). The court must affirm the ALJ's decision unless it rests on legal error or is unsupported by substantial evidence in the administrative record. *Gutierrez v. Comm'r of*

*Soc. Sec. Admin*, 740 F.3d 519, 522 (9th Cir. 2014); *see also* 42 U.S.C. § 405(g) ("findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive").

The substantial evidence standard is not onerous: it is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Gutierrez*, 740 F.3d at 523-24 (quoting *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012)). The ALJ need not discuss every piece of evidence in the record, but he cannot ignore or omit evidence that is significant or probative. *Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012). The ALJ's discussion must adequately explain his decision in light of the evidence, for "the ALJ, not the district court, is required to provide specific reasons for rejecting [the evidence,]" *Stout v. Comm'r Soc. Sec. Admin*, 454 F.3d 1050, 1054 (9th Cir. 2006), and the court is "constrained to review the reasons the ALJ asserts." *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003).

In reviewing for substantial evidence, the court examines the entire record, considering both evidence that supports and undermines the ALJ's decision. *Gutierrez*, 740 F.3d at 524 (citing *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001)). The ALJ alone is responsible for determining credibility and resolving ambiguities. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). Further, where "the evidence is susceptible of more than one rational interpretation, the decision of the ALJ must be upheld." *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

### III. DISCUSSION

**A.   SSDI and SSI claims are evaluated under a five-step sequential process.**

The Commissioner of Social Security follows a five-step sequential process for determining whether a claimant is "disabled" for the purposes of SSDI and SSI. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987). The Commissioner ends the

process if, at any step, she finds disability or nondisability. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Barnhart v. Thomas*, 540 U.S. 20, 24 (2003). "The burden of proof is on the claimant at steps one through four, but shifts to the Commissioner at step five." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009).

Step one directs the ALJ to determine whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If so, the claimant is not disabled and the Commissioner denies the claim. *Id*. §§ 404.1520(b), 416.920(b).

The second step requires the ALJ to determine whether the claimant's medically determinable impairment or combination of impairments is "severe." *Id*. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). "Severe" impairments are those that significantly limit the claimant's physical or mental ability to do basic work activities. *Id*. §§ 404.1520(c), 416.920(c). The Commissioner denies the claim where the claimant lacks a severe impairment, or a severe combination thereof. *Id*. §§ 404.1520(c), 416.920(c).

In step three, the ALJ compares the claimant's severe impairments to the Agency's impairment list. *Id*. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *see also id*. § 404, Subpt. P, App. 1 ("Listed Impairments"). Where the claimant's impairment is contained on the list, or is equivalent to a listed impairment, and the claimant also meets the corresponding durational requirement, the claimant is presumed disabled. *Id*. §§ 404.1520(d), 416.920(d).

If the Commissioner does not find disability at step three, however, review of the claim proceeds to the fourth step: whether the claimant, despite her severe impairments, can perform past relevant work. *Id*. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). The claimant is not disabled where she can engage in such work. *Id*. §§ 404.1520(e), 416.920(e). If the claimant cannot perform past relevant work, but the Commissioner demonstrates that the claimant is able to perform other kinds of

work, the claimant is again found not disabled. *Id*. §§ 404.1520(f), 416.920(f). The ALJ will find the claimant can return to work if she can perform the "actual functional demands and job duties of a particular past relevant job" or the "functional demands and job duties of the [past] occupation as generally required by employers throughout the national economy." *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001) (internal quotation and citation omitted). The ALJ makes this determination in light of the claimant's "residual functional capacity" ("RFC") and the physical and mental demands of the work previously performed. 20 C.F.R. §§ 404.1520(f), 416.920(f); *see also Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). In short, RFC is what the claimant can still do despite her limitations. 20 C.F.R. §§ 404.1545, 416.945.

When evaluating a claimant's RFC, the ALJ must assess all of the evidence, including medical reports and descriptions by the claimant and others of the claimant's relevant limitations. *See id*. §§ 404.1545(a), 416.945(a). However, the ALJ is not required to believe every allegation the claimant offers regarding her limitations. *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007) (citation omitted). The ALJ must follow a two-part inquiry where the plaintiff alleges that the disability results from excessive limitations or pain. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007); *see also* Social Security Ruling 96-7p, 61 Fed. Reg. 34483 (July 2, 1996). First, the ALJ determines whether the claimant has presented objective medical evidence of an underlying impairment that reasonably can be expected to produce the alleged symptoms. *Lingenfelter*, 504 F.3d at 1036. Second, where no evidence suggests that the claimant is a malingerer, the ALJ may reject the claimant's allegations only by articulating "clear and convincing" reasons for doing so. *Id*.

The "clear and convincing" standard is the most demanding standard in Social Security case law, *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014), and it requires that the ALJ "specifically identify the testimony she or he finds not to be credible and must explain what evidence

undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001).  The ALJ must cite to the record and discuss specific evidence therein.  *See Vasquez v. Astrue*, 572 F.3d 586, 591-92 & n.1 (9th Cir. 2008); *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993) (explaining that the ALJ must "point to specific facts in the record" to support a credibility finding).  The focus, however, is ultimately upon the reviewing court: the credibility determination must be "sufficiently specific to allow a reviewing court to conclude the [ALJ] rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony."  *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004) (quoting *Rollins v. Massanari*, 261 F.3d 853, 856-57 (9th Cir. 2001)); *Byrnes v. Shalala*, 60 F.3d 639, 642 (9th Cir. 1995); *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991).

Permissible bases for finding the claimant not credible include conflicts between the allegations and the claimant's daily activities, *Orn*, 495 F.3d at 636, and lack of medical evidence. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain [and limitations] testimony, it is a factor the ALJ can consider in [her] credibility analysis.").  Medical opinions are also probative evidence when determining credibility of subjective complaints.  20 C.F.R. §§ 404.1529(c), 416.929(c); *Rollins*, 261 F.3d at 857.

The burden shifts to the Commissioner to establish, in step five, that the claimant can perform jobs available in the national economy.  20 C.F.R. §§ 404.1560(c), 416.960(c).  If the claimant cannot do the work she did in the past, the ALJ must consider the claimant's RFC, age, education, and past work experience to determine whether the claimant can do other work.  *Yuckert*, 482 U.S. at 141-42.  The ALJ may meet this burden either through the testimony of a vocational expert or by reference to "the Grids."  *Tackett v. Apfel*, 180 F. 3d 1094, 1100 (9th Cir. 1999).  Under

either method, the ALJ must identify other occupations available in significant numbers in either the region or several regions of the United States that the claimant can perform. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 404.1560(c), 416.960(c). If the ALJ establishes that the claimant's RFC allows her performance of other occupations, she is not disabled. 20 C.F.R. §§ 404.1566, 416.966. Conversely, if the ALJ concludes that the claimant cannot adjust to any other work, the claimant is disabled. *Id*. §§ 404.1520(g), 416.920(g).

**C.     The ALJ followed the five-step process and concluded plaintiff was not disabled.**

In reviewing plaintiff's claims for SSDI benefits and SSI payments, the ALJ followed the five-step process described above. (AR 29-31). In step one, the ALJ determined that plaintiff had not engaged in substantial gainful activity since February 20, 2009. (AR 31). At step two, the ALJ found that plaintiff has one severe impairment, bipolar disorder. (AR 31). In contrast, the ALJ concluded that plaintiff's other medical conditions, namely chronic obstructive pulmonary disease, mild degenerative disc disease, and past substance abuse were not severe because "the record did not document any significant limitations associated with these impairments." (AR 31).

In step three, the ALJ found that none of plaintiff's severe impairments equaled the severity of a listed impairment. (AR 32-33). As required by the regulations, the ALJ first compared plaintiff's bipolar disorder to the listed impairments, and next evaluated it in light of the criteria for such impairments to determine whether plaintiff's impairment was medically equivalent to the listed impairments. (AR 32-33); *see also* Social Security Ruling ("SSR") 02-1p, 67 Fed. Reg. 57859-64 (Sept. 12, 2002).

The ALJ proceeded to step four and made several findings. First, the ALJ found that plaintiff's alleged symptoms could not reasonably be expected to produce the symptoms she alleged. (AR 33). Second, and therefore, the ALJ concluded that plaintiff possessed the RFC to perform a

full range of work with additional non-exertional limitations. (AR 33). In so concluding, the ALJ afforded only moderate weight to the opinion of Dr. Aisha Devera, a consultative examining psychologist, and specifically discounted Dr. Devera's opinion that plaintiff's mental health deficits likely rendered her unable to work. (AR 40-41). Finally, the ALJ concluded that the plaintiff's RFC did not allow her to perform her past relevant work as an office manager. (AR 45).

In step five, the ALJ concluded that plaintiff was not disabled because she could perform jobs available in the national economy available in significant number in light of her RFC, age, education, and work experience. (AR 45). Relying on the testimony of an independent vocational expert, the ALJ held that plaintiff work as a "cleaner/polisher," "housekeeper/maid," and "final assembler (optical)," positions respectively totaling 1,400, 6,600, and 1,280 jobs in Nevada, and 480,000, 880,000, and 300,000 positions nationwide. (AR 45-46). Accordingly, the ALJ denied plaintiff's claim for benefits. (AR 46).

**D.    The ALJ's decision to partially discount Dr. Devera's opinion was legally sufficient.**

Plaintiff challenges the adverse benefits determination on the sole basis that the ALJ improperly rejected the opinion of Dr. Devera. In pertinent part, Dr. Devera opined that plaintiff's "current mental health deficits are likely to prevent [her] from working at this time." (AR 422). The ALJ did not accept this conclusion. Plaintiff contends that the ALJ's reasons for rejecting the opinion were legally insufficient, and also that the "ALJ reject[ed] Dr. Devera's opinion simply because the ALJ in his lay opinion disagree[d] with Dr. Devera's medical opinion" (#15 at 7). The argument is not persuasive because the ALJ's reasons are specific and legitimate.

An ALJ may encounter three types of medical opinions in the administrative record: treating, examining, and nonexamining. Each type receives different weight in the ALJ's review. *Garrison*, 759 F.3d at 1012. Generally, opinions from examining providers receive greater weight than those

from nonexamining providers, and among examining providers, the ALJ is to accord greatest weight to the treating physician. *Id*.

This is not to say, however, that the ALJ is bound by the conclusions of any particular medical provider. Although the ALJ must articulate "clear and convincing" reasons for disregarding an examining physician's uncontradicted opinion, he may reject a contradicted opinion with specific and legitimate reasons that have support of substantial evidence. *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1222 (9th Cir. 2010) (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)). An ALJ provides specific and legitimate reasons by setting forth a detailed and thorough summary of facts and conflicting medical evidence, stating his interpretation thereof, and making findings. *Garrison*, 759 F.3d at 1012.

In supporting a decision to accept certain medical opinions over others, the ALJ may cite contradiction, inconsistency with the evidence, and consistency of the accepted opinions with the administrative record as a whole. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). In particular, a physician's opinion may be rejected when the treatment notes "provide no basis for the functional restrictions [the physician] opined should be imposed . . . ." *Connett*, 340 F.3d at 875. Further, where a medical opinion rests in large part on a claimant's self-reported complaints, the ALJ properly rejects the opinion when he has properly discredited the claimant's symptom and limitations allegations. *Morgan v. Comm'r of Soc. Sec. Admin*, 169 F.3d 595, 602 (9th Cir. 1999).

In this case, the ALJ articulated legally sufficient reasons for declining to accept Dr. Devera's opinion regarding plaintiff's inability to work. First, on the purported basis of the record, the ALJ doubted that plaintiff's "extreme limitations in social function and concentration" were representative of her typical symptoms, and instead resulted from "drug relapses." (AR 41).

Accordingly, the ALJ concluded that Dr. Devera's suggestion that plaintiff is unable to sustain work was not an accurate characterization of the ordinary effects of plaintiff's mental impairment. (AR 41). Second, the ALJ pointed to the minimal, conservative nature of plaintiff's mental health treatment. As the ALJ explained, plaintiff treats her impairments "with medication management and highly infrequent counseling (one time per month)[,]" and "[t]his lack of intensive psychotherapy more than suggested that her mental impairment was adequately controlled with nothing more than routine, conservative care, during periods of sobriety." (AR 41). Third, the ALJ pointed to the "long history of cocaine, methamphetamine, and marijuana abuse" in the record, and on that basis questioned whether plaintiff "had a true, mental illness." (AR 41). Assuming that the substantial evidence supported these statements, they are legally sufficient reasons for discounting Dr. Devera's disability conclusion.

More importantly, the ALJ was not obligated by governing regulations or applicable precedent to accept Dr. Devera's opinion on this point. Rather than a medical determination, inability to work is an administrative conclusion. As the Ninth Circuit has explained,

> [a]n impairment is a purely medical condition. A disability is an administrative determination of how an impairment, in relation to education, age, technological, economic, and social factors, affects ability to engage in gainful activity. The "relationship between impairment and disability remains both complex and difficult, if not impossible, to predict . . . ." The law reserves the disability determination to the Commissioner.

*McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2010) (quoting American Medical Association, Guides to the Evaluation of Permanent Impairment 5-6 (6th ed. 2008)). As the ALJ's decision indicates, the ALJ incorporated several aspects of Dr. Devera's opinion into the RFC assessment. (*See* AR 40-41). It was not error for the ALJ to accept only those findings while simultaneously disagreeing with Dr. Devera's ultimate disability conclusion. To the contrary, that result properly

recognizes the role of the Commissioner in the disability evaluation process. Accordingly, as the ALJ's articulations were specific and legitimate, the ALJ did not err.

### E. The ALJ's reasons for weighting the medical opinion evidence lacked support of substantial evidence.

Although the ALJ's reasons are legally sufficient articulations, they lack support of substantial evidence. As required by *Turner*, the ALJ's reasons must be specific and legitimate, and also be based on substantial evidence. *See* 613 F.3d at 1222. Stated simply, the ALJ's analysis relied heavily upon plaintiff's use of illicit substances, and the purported extent of such use was the ALJ's principal reason for assigning weight to the various medical opinions. A close review of the record shows that the ALJ's interpretation lacks substantial support, and therefore, he legally erred.

The ALJ's belief that plaintiff's mental symptoms stemmed from drug use played a central role in his evaluation of the record's mental health opinions. First, as described above, the ALJ discounted Dr. Devera's opinion that plaintiff is unable to sustain work because of plaintiff's apparent substance abuse. The ALJ opined that there was little evidence to suggest anything more than moderate limitations "in periods of sobriety," and therefore, he "properly rejected [Dr. Devera's] contention that [plaintiff] could not perform such work." (AR 41). Further, the ALJ asserted that the symptoms that plaintiff described to Dr. Devera "transpired during periods of heavy substance abuse," a conclusion he apparently drew from the "long history of cocaine, methamphetamine, and marijuana abuse, *with associated psychotic symptoms*" he purports the record reveals. (AR 41) (emphasis added). On these bases, the ALJ questioned Dr. Devera's conclusion that plaintiff has a "true, mental illness."

Second, and similarly, the ALJ accorded "minimal weight" to the opinion of Dr. Agapito Racoma, plaintiff's treating mental health provider, because of plaintiff's use of drugs. He reasoned that Dr. Racoma "failed to mention [plaintiff's] continued use of illicit drugs, or their impact on her

mental capacities." (AR 39). Yet the ALJ also stated that Dr. Racoma's treatment notes indicated "exacerbated" symptoms "during periods of illicit drug abuse." (AR 39). The inconsistency is puzzling and unexplained.

Third, the ALJ again relied on plaintiff's use of narcotics when evaluating the opinions of Dr. Jack Azara and Dr. Susan Kotler, each of whom reviewed plaintiff's mental health records in a consultative capacity. The ALJ afforded "lesser weight to their 'mild' conclusions of limitation in concentration, persistence, or pace and activities of daily living" because "treatment notes reflected that the claimant had demonstrated a longstanding history of drug abuse, above and beyond any type of psychosis," and this "ongoing issue clearly exaggerated her mental symptomatology, which was typically substance-induced." (AR 43-44).

If the record provides reasonable support to these interpretations and conclusions, this court must affirm the decision under the substantial evidence standard. *Gutierrez*, 740 F.3d at 523-24. Yet the ALJ's statements about plaintiff's substance abuse simply lack sufficient evidentiary support. The record plainly shows that plaintiff continues to use marijuana, but lacks any related suggestion that she has cannabis-induced psychosis. Plaintiff consistently informed her treating providers that she was using marijuana, allegedly for medicinal purposes. (*See, e.g.*, AF 274, 318-26, 416). Yet not one of the mental health providers who treated or examined her questioned, even remotely, whether her mental health issues resulted from her longstanding use of cannabis. (*See* AR 251-76 (Dr. James Northrop, plaintiff's treating psychologist), 415-22 (Devera), 412-13, 451-68, 522-42 (Racoma), 424-40 (Azara), 495-511 (Kotler)). Relatedly, none of the medical evidence suggests that plaintiff used cocaine past her twenties. (*See, e.g.*, AR 416, 284 ("[s]ubstance dependence by history unchanged, periodic use of cannabis")). In addition to an absence of narrative suggestions by the medical providers, the medical records similarly lack an ICD-9 diagnosis code in the 292 series,

which generally pertain to drug-induced psychoses. *See* 292 Drug Psychoses, http://www.mdhealthresource.com/icd-9-cm-medical-codes/292-drug-psychoses (Oct. 17, 2014). At bottom, no evidence reasonably supports the suggestion that plaintiff's symptoms owe to the use of marijuana or cocaine.

As to methamphetamine, by contrast, the record is somewhat ambiguous. In 2010, Dr. Northrop noted her "substance dependence by history" was "unchanged," and that she continued to use only marijuana on a "periodic" basis. (AR 284). However, he also diagnosed plaintiff with ICD-9 code 305.70, amphetamine abuse by history (AR 304), and this diagnosis code is distinct from abuse that is in remission. *See* ICD-9-CM Diagnosis Code 304.73, http://www.mdhealthresource.com/icd-9-cm-medical-code/305.73 (Oct. 17, 2014) (indicating a separate diagnosis code for abuse in remission). Yet Dr. Northrop's progress notes consistently indicate that plaintiff's used only marijuana during the time he treated her. (AR 251-76, 280-301, 303-11). This creates some ambiguity as to whether plaintiff continued to use methamphetamine. Further, Dr. Azara indicated plaintiff's use of methamphetamine was "[i]n full sustained remission by history" (AR 432), and this conflict creates greater ambiguity as to whether plaintiff's use of methamphetamine continued regularly past her twenties.

The ALJ correctly observed that plaintiff's statements about her use of narcotics were inconsistent. For example, she admitted to methamphetamine use to some providers, but not others. (*Compare* AR 596 *with* AR 416). Further, she stated in some instances that use ended in her twenties (AR 596) but indicated she again used methamphetamine for a period of two years in her late thirties (AR 274). Plaintiff also conceded at her hearing that she used "a little" methamphetamine in mid-2012. (AR 67; *see also* AR 547 (indicating a positive drug screen for

methamphetamine)).  Altogether, this evidence fairly raises credibility concerns about plaintiff's allegations, and also creates some basis for questioning the true source of plaintiff's symptoms.

Although these facts may raise credibility issues, they do not sufficiently support the sweeping characterization that plaintiff's mental impairments are drug induced.  As with the records regarding marijuana and cocaine, the medical evidence simply makes no suggestion, even remotely, that her symptoms owe to methamphetamine use or are heightened during purported periods of relapse.  Similarly, the treating, examining, or consulting providers did not state that they were unable to determine a "baseline of mental illness," as the ALJ claims, because of plaintiff's use of drugs.  (AR 41).  The court is mindful that it is the ALJ's province to resolve ambiguities, *Meanel*, 172 F.3d at 1113, but the court cannot reason that the evidence here is rationally susceptible to the interpretation the ALJ offers.  Absent any medical evidence or opinions, plaintiff's admissions that she used drugs in her past, and inconsistent evidence that she continues to use certain narcotics on a periodic basis are not reasonable bases to conclude that her symptoms of bipolar disorder result entirely from drug use.  Accordingly, the court concludes that the ALJ's weighting of the medical opinion evidence, based on his unsupported conclusions regarding plaintiff's drug abuse, lacked support of substantial evidence.

**F.     The record warrants remand for further development.**

Where further administrative proceedings can cure the defects in the original proceeding, remanding for further proceedings is the appropriate remedy.  *Garrison*, 759 F.3d at 1019.  As the Ninth Circuit has observed, the "ALJ has a duty to conduct a full and fair hearing," and this sometimes triggers a "duty to inquire."  *McLeod*, 640 F.3d at 885-86.  The ALJ need not make a specific finding of ambiguity for this duty to arise.  *Id.*  Although the plaintiff usually must demonstrate prejudice from the ALJ's failure to develop the record, "where the circumstances of the

case show a substantial likelihood of prejudice," a reviewing court may remand the case for further development when the ALJ fails to independently exercise his duty. *Id.* at 888; *see also Garcia v. Comm'r of Soc. Sec.*, No. 12-15686, 2014 WL 4694798, at *8 (9th Cir. Sept. 23, 2014); *Tonapetyan v. Halter*, 242 F.3d 1144 (9th Cir. 2001).

In this case, remand for further development is an appropriate remedy. As described above, the ALJ centered his evaluation of the mental health opinions on plaintiff's history of substance abuse, and enough evidence suggests that illicit drugs may well play a significant role in the symptoms plaintiff alleged and providers observed. At the same time, the record is not a sufficiently strong basis for crediting and discrediting the opinions because it is ambiguous and uncertain. The ALJ's failure to develop the record on this point was prejudicial, as plaintiff's use of narcotics was a persuasive fact in the ALJ's evaluation of the medical opinion evidence. As additional evidence regarding plaintiff's use of illicit substances will likely resolve the ambiguity in the record, and thereby facilitate a fairer, more accurate evaluation of plaintiff's claims for benefits, the court will remand the case under 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

### IV. CONCLUSION

Although the court concludes that the ALJ articulated legally sufficient reasons for discrediting Dr. Devera's opinion, those reasons are premised on a reading of the evidence that lacks substantial support. Accordingly, plaintiff's motion for remand (#15) is granted, and that defendant's cross-motion to affirm (#19) is denied.

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Local Rule IB 3-2, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.     This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## V. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that plaintiff's motion for remand to the Commissioner (#15) be **GRANTED**.

**IT IS FURTHER RECOMMENDED** that defendant's cross-motion to affirm (#19) be **DENIED**.

**IT IS FURTHER RECOMMENDED** that the Clerk **ENTER JUDGMENT** accordingly and close this case.

**DATED:** November 14, 2014.

_____
**UNITED STATES MAGISTRATE JUDGE**